morning your honors James Harris repellent and I'd like to reserve five minutes for rebuttal the most important ruling in this case on appeal is the district court's ruling that Metropolitan's burden respecting actual knowledge required it as part of its rebuttal burden to rebut PBCC's theory that PBCC's UCC filings were in the you're going to use Metropolitan for Huntington yes all right is that all right which I use okay that no that's fine that Metropolitan's burden required it to disprove PBCC's theory that the use it that it's UCC filings were in the Mountain Bank files there are three the first is if you go back to the original trial everybody knew the state of discovery everybody knew the state of the evidence and PVCC didn't even put forth this theory at trial at trial all that it argued was that the actual knowledge of Metropolitan's predecessor should be attributed to Metropolitan and that satisfied the actual knowledge standard that disproved the actual knowledge standard under 9308 because the theory was never even raised by PBCC at trial the burden as a matter of law couldn't have shifted under you know conventional burden shifting analysis under the California evidence code it couldn't have conceivably shifted to Metropolitan to disprove a theory that had never even been put on the table that's the first legal error that the judge it seems to me though that the three judge panel that sent this back yes even though it's not published it would seem to me that it's law of the case that Metropolitan had to had the burden of proof on its defense under UCC 9-308 a it seems to me that that's what that three judge panel said I'm making a more and if that's the case then if that is law the case and that and then the district judge assigned that burden to Metropolitan and found that Metropolitan did not meet its burden to establish lack of actual knowledge it would seem to and then we review that for clearly erroneous it would seem that if it's not clearly erroneous then you lose well I'll assume we briefed the question of who has the burden of proof and and I won't repeat those arguments but with respect to the question you're asking now I'm making I'm making a more nuanced point I'm assuming now that that Metropolitan had the burden of proof what the district court said the district court didn't seem to doubt if you if you read the district court's opinion carefully he didn't doubt that Metropolitan established lack of knowledge in the first instance what the district court said was PBCC put in evidence that if UCC filings were in Metro in the Mountain Bank files and that Metropolitan therefore had to demonstrate that it didn't review those files in order to rebut the theory that PBCC tendered my point is PBCC never tendered that theory at trial it the only argument it ever made at trial respecting actual knowledge and the due diligence period was that the knowledge of Metropolitan's matter of law that was there that required the first reversal we said on appeal that that was wrong and we sent it back I think the exact words were that that Metropolitan needed to prove that without its needed to prove that without its actual knowledge of PBC security interest that that burden was on you yes I understand so the theory that the cases originally tried on and whatever position they took was wrong and you prevailed essentially and you got it sent back so that's for the judge to determine whether you had met your burden but as a matter of law since there's no new evidence submitted we're playing with the same hand we're playing with a trial and my point is that since PBCC and I'll move on you're playing with the same what you're saying is it's he's there was based on the evidence there was a trial in effect the judge if he complied with the mandate had to determine whether you met your burden of proof yes there seems to be a little bit the elephant in the room here and you know obviously when you look at a cold record you know those of us that have been trial judges know it it can look different when you're actually hearing it and there there was something that went on in trial to the effect of that I believe PB PBCC PBBC yeah that they actually they tried to get Metropolitan to admit when they had actual knowledge and Metropolitan sort of fudged on that but said okay we did have actual knowledge at some point and then so they admitted that but then they they wouldn't say exactly when they did and if so the courts does have an admission that they had actual knowledge at some point and so then looking at everything else had to decide if they had actual knowledge at a time that would be appropriate yes in this and I don't see why based on some credibility calls there that and certain things that the way the transactions had occurred that the evidence wouldn't support that there was actual knowledge at an appropriate time well let's vote let's vote let's separate this into two pieces there a couple of appropriate times the initial portfolio of loans was taken in May of 1998 and the judge said that Metropolitan didn't meet its burden of proof of not showing actual knowledge from the due diligence and then there were substitution loans taken over the next couple of years and that conceptually is a different issue but I want to focus on the actual knowledge before the initial portfolio was taken because if that finding falls and basically the rest of the case for PBCC falls with respect to actual knowledge then Metropolitan put in evidence that PBCC never took possession of the vast bulk of the chattel paper and it never stamped the chattel paper and we included in our brief the official comments from former section 9308 which make clear that the purpose of 9308 is to encourage a robust secondary market in chattel paper and that secondary market can only work given that these transactions happen everywhere across the country every time a car dealer sells a car it creates chattel paper and typically sells it and so I'm sorry to interject but just a real quick question yes let's assume that you did see the UCC filing at the time the transaction closed I agree with you that the language of the comment seems pretty clear that even though you have this blanket security interest in all chattel paper somehow it suggests that you need to have specific knowledge of the individual chattel paper that's that issue but yes are there circumstances where somebody could take a blanket security interest in all of a debtor's chattel paper and then there would still be some individual piece of chattel paper that wouldn't be covered by that I not some circumstance that's exactly what what the comments go to I mean if you if you're a take a well wait wait you don't dispute that Pacific had a security interest in the chattel paper that your client no we don't dispute that they had an initial security as we say that it was primed by virtue of 9308 but so I'm just trying to figure out is there because when I read you know to me the word all sort of suggests that if you know that somebody has a security interest in all of the debtor's chattel paper that's going to cover everything and I don't understand are there circumstances where there would still be something left out well all but the comments basically say it doesn't cover anything and I know but why I don't but what that's that's what I am trying to explain okay chattel paper transactions occur around the country every single day every single car dealer creates a piece of chattel paper when when you buy a car you get the title and you get a contract your contract is the chattel paper most every single dealer around the country sells that chattel paper it's called factoring the receivables they sell the chattel paper these are small transactions there are every single day so 9308 works the opposite of the way the rest of the UCC works we all learned in law school that normally if there's a security filing that puts the whole world on notice and and you're basically doomed if that filing is on notice is on file 9308 works the opposite because the transactions are so small and they are so universal there's so many thousands of them that imposing the transaction cost on all these financiers who are going to buy the chattel paper would be enormous if they had to do a title search with respect to each and every piece of chattel paper they were buying okay I follow that but if you know you have actual knowledge that somebody's got a security interest in all of the chattel paper what more do you need to know about a specific piece well here's the thing if you take a look at the UCC filing here it says PBC has has a security interest in every single piece of chattel paper that Gallup said that it now owned or may hereafter acquire right or hereafter acquire right frequently as a practical matter and this is borne out by the facts of this case financiers like PBCC are grossly over secured and they don't bother taking security interest in each and every single one of the pieces of paper that the the blanket filings end up being an inaccurate roadmap they don't tell you what the financier has actually done many circumstances specific pieces of chattel paper are not in fact within the security interest have not in fact been pledged to the financier and so the framers the the commentators to 9308 didn't want to put that burden of searching on the purchaser and the comments are very very clear if if you have knowledge of a blanket security interest that doesn't put you on knowledge of an interest in specific chattel paper and it doesn't give you a duty of inquiry okay so is there let's say that I'm the creditor and I take the blanket security interest in somebody's chattel paper is there something after that UCC filing that I have to do to perfect it as to an individual piece of chattel paper you you you perfect by virtue of there are two ways to perfect you can perfect by it by filing which is this which is the disfavored method under 9308 or you can file you can perfect by marking the the chattel paper with your stamp or by taking possession of it and we gave you all sorts of authorities that say the law encourages the party in PBCC's position to stamp or take possession and when they don't the equities favor the innocent purchaser I follow that but I'm just trying to get clarification on a more narrower point you said that there are circumstances where somebody takes a blanket security interest but nonetheless they don't actually get a security interest in all of them I get right so what it what more do you have to do besides file one of these UCC something might not be pledged to you but that the most important but those are saying they might not this that and the other but when you have the burden of proving you did not have actual knowledge how did you you know that particular statement of all seems to vote against you and you have the proof you know you've got the burden to prove you did not have actual knowledge why was the district  based on the commentary the commentary says if the financier has not taken actual possession or hadn't stamped its lien on the paper actual knowledge is unlikely to be present as a matter it's a it's a you had the burden and some of these are factual determinations Metropolitan admitted it gained knowledge of PBCC's security interest at some point in time quote-unquote right and it's incumbent on Metropolitan to show when it happened there's nothing in the record to prove definitively that Metropolitan did gain knowledge of PBC's interest during the due diligence but the Metropolitan had extensive contact with and access to records of Galaxy Mountain and first commercial during that process and one Metropolitan employee even admitted to having a conversation albeit brief with a Galaxy employee about PBC as a creditor so I'm saying given you had the burden given that that's in the evidence how's the district court you know it it seems all to suggest that Metropolitan could have gained knowledge as early as the 1998 due diligence and given that you had the burden to approving well I don't see how the district court in several respects first of all the district court didn't cite any of the evidence that Metropolitan introduced Metropolitan introduced evidence from both the people who did the due diligence and they said all we looked at were the loan files of the Galaxy customers that's the cut that's the loan file that Galaxy when it's selling the mobile home creates where it looks at the credit ratings of the customer looks at their employment things like that both Mr. Taylor and Mr. Tyler said all we looked at all we looked at were those credit files and they said and this is a quote the credit files had purchase agreements promissory notes credit applications credit reports and payment records so Taylor and Tyler both said that and they also both said that they didn't look at any of the files respecting Mountain Bank's purchase of the chattel paper from Galaxy. What if the district court didn't believe everything those witnesses said? Well there was no suggestion at any point there was no impeachment there was no argument by by PVCC that that evidence was unworthy of belief and the evidence came not only from from Mr. Taylor it came from Mr. Tyler and it came from Mr. Taylor's boss that in a transaction like this all you care about are the underlying loan files you don't care about the transaction between Galaxy and Mountain Bank you want to save your time for rebuttal yes please can I ask a question there one of the things that I want to get clear in my mind there was a time in 1999 that you you got information from discovery and as I understand it it said it told you that PCC had a security interest in all the loan contracts now owned or hereafter acquired by Galaxy so I have two questions first I just want to be sure that goes beyond the UCC filing in terms of the information it gave you at least it seems to me and number two the act if you knew if that was sufficient to show that you knew in October of 1999 that is relevant because and finish the sentence for me that that would be relevant only as to the substitution contracts that were taken after that date it would have no relevance with respect to the initial so if we would let's assume hypothetically if we agreed with you on the earlier one in but we disagreed with you and we said you had knowledge as of October 1st 1999 and that would at least what affect the issue of damages it would affect and would affect it dramatically because about two-thirds of the loans would have been taken prior to that date and the other point that I would make in connection with your observation about the pledge agreements is that they only identified they only identified specific pieces of chattel paper only a handful most of which had actually been released by Mountain Bank so at most what those pledge agreements would put Metropolitan notice as to would be the specific pieces of chattel paper identified in the exhibits to those agreements and I'll come back and rebuttal explain why thank you good morning morning may it please the court my name is Kim to Marcia and I represent Pacific Business Capital Corporation in this matter what's important to understand in this case is that Metro Bank in order to avoid a judgment against it for conversion had to prove all three elements of a defense under UCC section 9308 and it failed on all three as to the substitute contracts and on two of the three as to the initial contracts as well and the district court made factual findings on each of those factors in this court's task is really to evaluate whether the district court clearly aired and maybe you can just start with I'll start with whichever one the court would like the one that I was asking counsel about I read those comments to the 9308 as being pretty strongly in their favor so just tell me why why is his reading of those comments wrong because his reading carefully avoids what the comments talk about the comments say mere knowledge that there is some blanket security interest doesn't mean in channel in shuttle in shuttle paper okay mere knowledge that there's some interest in chattel paper a blanket interest doesn't tell you what that blanket covers that comment is really directed at the kind of UCC filing that says PBCC has a security interest in chattel paper and stops there doesn't say which chattel paper doesn't either say these five pieces or all that commentary isn't directed toward UCC filing statements that are more precise and using the word all is a way to be more precise and in fact it's the only way to be more precise that's available to the holder of a security interest like PBCC that holds not just a security interest in currently existing chattel paper but also in chattel paper that's continuing to be generated the business at issue here is a seller of mobile homes and they're selling homes off the lot every day and creating pieces of chattel paper and the nature of the agreement is not what Mr. Harris just suggested to you the pledge agreement doesn't say we only have a security interest in these listed contracts it says we have a security interest in every single piece of chattel paper including the things that are listed so there's no other way to have a specific UCC filing and the comments don't suggest that there is the comments are really directed at a practice of UCC filings that are really too vague to permit people to understand exactly which pieces of chattel paper or other kinds of collateral it applies to and when you've got a vague UCC statement what that commentary is saying is you can't just say any kind of UCC statement that might touch this collateral is enough to put you on notice so that you have to inquire that would be a reason to know standard that's really what the commentary is directed at at clarifying that you have to have some piece of information that ties the security interest to these particular pieces of chattel paper and as your honor noted in his questioning all actually does mean all and a reasonable reader of that should understand that it's every single piece of chattel paper this isn't a one sentence UCC it's a UCC statement that not only says all chattel paper but then has a one page type written list of what all the inventory is. It's a little bit tricky here is that placing the burden on Metropolitan seems to require it to prove a negative specifically to prove it didn't have actual knowledge so what would Well and there the district court's specific discussion of the evidence is particularly helpful like most defendants in civil litigation Metropolitan didn't put up a witness who confessed to knowing about the security interest they put up a couple of witnesses who didn't even work at the company at the time of the transaction they put up their chief credit officer who wasn't personally involved in due diligence. It seems that they did introduce testimony that seemed to establish that employees had not seen the UCC 1 or the UCC 3 filings so wasn't that enough for Metropolitan to show it lacked actual knowledge? And the district court found that it wasn't and that's because the district court weighed that evidence with all the evidence it's important to understand that Mr. Taylor did not actually deny seeing the UCC 1 or the UCC 3 specifically releasing only part of that interest in every single piece of chattel paper nor did he deny seeing the pledge agreements or security agreements or the letter from PBCC to Metro Bank reiterating that it continued to have a security I'm sorry to Mountain Community Bank reiterating that it continued to have a security interest. He just said he couldn't remember and he also testified in the district court specifically relied on this he testified that he had a file of notes that he created during the due diligence process but that was never provided was never introduced into evidence the district court found it relevant that if Mr. Taylor and excuse me there's a Taylor and a Tyler if Mr. Taylor actually hadn't looked at the records actually didn't know about this that that additional evidence of exactly what was included in his due diligence would have been important. I guess this goes to what I was talking about when we look at a cold record as opposed to when you actually see witnesses and you have a sense of what's going on in looking at the cold record what are we missing here that in terms of the district court was saying OK yeah you say that but I don't believe that or so what what's going on there from your perspective that assists you in asking for an affirmance of the district court saying hey you didn't eat your burden the other part of what's going on there is Metro's admission that it had knowledge at some point and it's particularly interesting that Metro gets a request for admission the rules require a party who receives a request for admission to specifically deny what they're asked to admit and if they don't specifically deny something the rule itself says that's deemed admitted and what Metro bank says in response to a request that they admit they knew on April 15th 1998 is we knew at some point we're not sure when we knew but we'll get back to you and they never respond now under the rules that alone constitutes an admission as of April 15th well didn't you have an obligation to follow up and press them for an answer no the rule itself says whatever you don't specifically admit is denied there are those involve a different kind of non-compliance to get the admission that you're talking about you would have had to bring a motion to compel to get them to respond no no that's actually under subsection a of the rule admissions you can what the court can do is say someone who just doesn't respond or responds only partially or responds ambiguously so you can't tell what they denied they can be deemed to admit because they essentially monkeyed around in answering and that's it that's if you bring a motion but subsection B says the effect of failing to specifically deny is to admit that's a self-executing section of the rule the district court the other thing that's important to recognize is that the district court considered that discovery response the district court didn't take the position I'm taking didn't say I'm just going to deem this admitted the district court said I'm gonna look at the fact that even when you were responding to a request for admission you couldn't pin down the date and then I'm gonna look at all the testimony you've given me and all of the information that they've produced in the record all of which was in the original trial it wasn't the basis for the district court's first decision but it was in the original trial both parties had the opportunity to ask to supplement evidence we didn't have any obligation to do so because we already had enough evidence from which the district court court made a negative inference by the fact that after even putting all of that on they never pinpointed when they had actual knowledge they admitted they had actual knowledge at some point but they never so the district court sort of that was a problem that was a problem for the district court the district court identified that as part of the problem and coupled that with the testimony of Mr. Taylor who was really the only person with personal knowledge of what happened during his review and his inability to make an express denial that he had seen this information all he would say was that he couldn't recall and he hadn't produced any of his notes of the time that would have let you know what he looked at or what he didn't look at the only other person involved in that review is Mr. Tyler he's first commercial banks representative and what he essentially said was I'm not the one who looked at the galaxy documents Mr. Taylor looked at the galaxy documents so Mr. Taylor's the only one who can testify and the district court found on the totality of the evidence that Metro Bank hadn't quite reached its 50% plus one to meet its burden of proof and that is really a decision for the district court and if that's a reasonable reading of the evidence it has to be affirmed on appeal one of the points I think that you made in your brief is that Metropolitan never produced its due diligence file was there a request for production of it and they never produced it or does the record simply indicate there was a due diligence file but they never produced it the record indicates that there was a due diligence file it's the district court that relied on the documentation coupled with the fact that the person whose notes those were said I can't remember that was the district court in weighing the evidence essentially saying if you can't remember and you admit there were paper documents I would have expected to see paper documents that would have helped me believe that you are telling the truth when you say we didn't know well it's sort of like when you say that you know so-and-so saw this happen and then you don't call so-and-so as a witness that the trier of fact is allowed to make a negative inference by the fact that you don't call that witness who would have been a logical witness to support your viewpoint is that what you're arguing exactly and and that's really the overall problem Metrobank had on its burden of proof on knowledge it couldn't quite get anybody who could really establish that no one knew about this security interest in April of 1998 when Metrobank was doing well if they make an argument which goes like this if they had actual knowledge why would they have made a multi-million dollar purchase without in the face of that knowledge because they they which is a it has some plausibility and they say on page five of their reply brief that you in effect made a strategic decision to argue on on the basis of that they should have known in order to avoid having to answer the question is if they actually had knowledge why would they have gone ahead with this transaction and the answer well there are a couple of answers to that question one is because they thought they could get away with it the record demonstrates that what they did after they obtained these records was went to the Nevada Division of Manufactured Housing and registered their lien rights in each of these individual mobile homes that's how they hoped to document they also hoped to introduce the negligence argument that you've heard some hint of here today and that's in the briefs the idea that PVCC couldn't really have had a security interest in these documents because it didn't go through and stamp every mobile home contract as each mobile home was being sold by its debtor in another state so they made they made a strategic decision to go forward with knowledge and you know based on on they on on some possibility that they could get away with it does that sound like how a reasonable person would act and that is a factual determination for the district court to make it's also important to recognize that what the district court found was that there was sufficient evidence that Mr. Taylor who's not the decision maker at Metro he's a line employee who does due diligence he's their agent for purposes of obtaining knowledge but the district court focused on what he learned about not on what the loan committee learned about and so it's reasonable to believe that there were individuals involved in decision making at Metro Bank that might not have known about the security interest but that's not the test under 9308 Mr. Taylor's knowledge is attributable and is sufficient to defeat the defense under 9308 I only have about seven minutes left let me ask you about well like we said it's our our seven minutes unless the 17 million is pretty harsh it but that's not really being questioned here no that was affirmed by the first panel it's not before this court okay now you can go and use your time okay it's important to understand that in addition to this knowledge finding which precludes all of Metro Banks defenses on all loans the district court also found a lack of evidence of possession and 9308 doesn't just require lack of knowledge it requires that the purchaser actually took possession of the chattel paper I the district court has pages and pages of examination of evidence and I don't want to go through all of them they're all in the record but the key here is those factual findings themselves are an independent basis on which this court can and should affirm because even if Mr. Harris could establish the district court was wrong on the knowledge factor he'd also have to establish that the district court was wrong on the possession well except that if we let's say we disagree with you about actual knowledge at the outset okay and we move to the 1999 time frame is there some different argument that you've got as to the discovery that they got in 1999 because if I understand it if you lose on that then basically actual knowledge doesn't come until after it doesn't matter anymore right no let me try try to answer that in a in a way that's as clear as possible it's these three I thought we didn't possess all the originals and then there are a handful of loans that they possessed on various dates but they but as to a substantial number of the loans just never had any original and then as to all loans found that there was evidence that galaxy regularly created multiple originals and that Metrobank would have had to possess multiple originals put aside the duplicate original so okay just put that aside didn't I thought the court made a finding that in February of a one they actually did have at least actual possession of all of the original contracts put it putting aside the duplicate no the district court found that for many of the contracts they didn't prove that they ever had any originals that's found on pages 16 to 17 of the district court's opinion and then as to others pages 11 to 17 of that decision there are a handful of contracts where there were specific possession dates those possession dates range from October of 1998 through August of 2000 and of course August of 2000 is well after the October 1st I that's what I'm saying but if I lose on that so go back to October of 99 why do you why do they acquire actual knowledge then if they didn't at the outset of the transaction if they were able to convince this court that the district court committed clear error in finding that they hadn't met their brother's not knowing right there's no way to get around the fact that their lawyer who is their agent for purposes of knowledge received in litigation over galaxy and the galaxy debt and again that's different from what they got in at the outset just they got they got the pledge agreements and what's what does that give them in terms of actual knowledge that the that if they saw the UCC filing at the outset wouldn't have given them the pledge agreement specifically states that pbcc has an interest in every single piece of chattel paper okay but that's what the UCC filings told them no is there something different that's all I'm asking there's something different that they got in 99 that they didn't get in 98 when they saw the UCC file they got it written out in more paragraphs they got it written out if their argument is that the commentary to the UCC says that a UCC one filing alone if it describes a big security interest can't possibly give you knowledge of what's under that blanket the pledge agreement that explains exactly what the security interest is surely must be able to give you knowledge of exactly what that security interest is but the comment doesn't apply to that comment doesn't apply to the actual agreements evidencing the security interests and it doesn't try to the comment is only directed at UCC ones and it's only directed at UCC ones that are insufficiently specific to let you know exactly which kinds or pieces of collateral are covered could I be sure I understand your answer to judge Watford I understand that in in in the in 99 they got in discovery pledge agreements that states that galaxy grants to PBCC a security interest in all of the loan contracts now owned or hereafter required by galaxy that's right and those are the pieces of chattel paper was that more I thought judge Watford was asking you whether that was more or less than the filing that we were talking about under the UCC it's exactly the same security interest no no but the information says it grants a security interest in all of the loan contracts now owned or hereafter required it's that in the in the UCC filings is that the exact language in the UCC filing the exact language in the UCC filings is all chattel paper the pledge agreement talks about all loan contracts well but that's isn't that different that that's that that is much more specific it's sort of a Venn diagram loan contracts are a form of chattel paper they're not the only chattel paper but but all does mean all and there's no dispute that these items were chattel paper or that they were chattel paper of galaxy and Silver State nor can there be any reasonable disagreement that all means all Metro banks argument is really seizing on a comment in the UCC that's directed at much more ambiguous UCC filings than this in my last 30 seconds I do just want to say that as to the replacement contracts regardless of the evidence on knowledge regardless of the evidence on possession there's no evidence of new value because the only reason that Metro Bank ever gets a replacement contract is that the terms of its deal say you're not really buying these contracts you're buying a right rate of return and if one of them turns out to be a bad contract you can switch it out for a good contract so you're really still getting your rate of return that's not new value in the sense of 9308 because the new value requirement of 9308 is intended to protect the entirely innocent first security interest holder like PBCC from the devaluation of their collateral and new value does that because as you take the one thing out you put new money in so my client remains protected that's a very important part of the 9308 test and of course it's not satisfied by the substitution of defaulting deficient loan contracts for ones that are actually paying out and I ask you one last question about this that I'm having trouble following this issue of the duplicate originals and the fact that the Metro didn't obtain the duplicate originals I'm trying to understand what's the significance of that how did that prejudice you in other words OK they were duplicate originals they say of the hundred and sixty only three duplicate originals were sold to somebody else how does the fact that they didn't get duplicate originals the existence of which they were unaware of how does that I'm just trying to figure out how how that should defeat as the district court seemed to suggest their ability to succeed it's important to understand the evidence is not that there are just three duplicate originals it's that duplicate originals were routinely created in fact they're arguing in their reply brief if it's correct you could say that the facts are wrong but they said that this report of a receiver said that although there may have been X number of duplicates far created that of the ones that issue here only three were actually sold to somebody else 12 of them were in the possession of my client and were introduced as exhibits at the trial but the legal relevance of duplicate originals is this section 9 3 0 8 is intended to facilitate the market in chattel paper but that doesn't mean that the first in time secured creditor doesn't have any way to protect their interests and the requirement of possession in 9 3 0 8 the reason that it's one of those three elements is that actually obtaining all of the originals is a way for a responsible truly innocent second in time security interest party security party to actually make sure that the person they're buying that interest from has the ability to sell that interest to them and the ability to show up with all of the originals and the physical passage of those originals from one person to another is what the U.C.C. has identified as an important factor in establishing the legitimacy and innocence of that transaction it's not a matter of prejudice it's a matter of it's a requirement under the rule so that I just want to be sure if I understand you is this is this just simply go to the issue of whether they had knowledge or not it goes to the issue of possession they had to possess the originals and if there were multiple originals as galaxy's employee testified was a regular transaction a regular occurrence they had to possess all the originals and that happens a lot when you sign two versions of a contract because there are two parties and everyone wants an original this is a again I'm just confused let's assume they had to possess all the duplicates or is that wrong did the district court not say that the district court said they had to possess all the originals and the U.C.C. recognizes that it's possible for more than one thing to be the original of the same piece of chattel paper it makes my head hurt too but that's a U.C.C. thing in commerce we actually sometimes have two originals of the same thing and but you weren't prejudiced by this I mean this this this essentially if I just want to be sure I understand it goes ultimately to the issue of knowledge I don't I don't see how does how do they how are they supposed to get be faulted for not having copies which they have originals that they weren't even aware of they're not copies their originals and the way in which it prejudices the first in time security interest holder under the U.C.C. is that one of the ways that secure person holding a security interest can protect themselves is by demanding that they've received the originals that's why you require that all of the originals go with the person who's getting the primary security interest and what the district court found here was that in addition to there not being evidence that they ever possessed any originals of certain contracts as well as knowledge and new value that there were duplicate originals and they didn't get all of them and the case was quite clear that they have to get all of the originals to satisfy the U.C.C.'s possession requirement thank you thank you first this is not a he said she said case the district judge said metropolitan affirmatively had to put in evidence that they didn't see the U.C.C.'s during due diligence metropolitan had no reason to do that because that issue had never been tendered why do you have to respond to an issue that's never been she raised the point about you know and I can see where a trial judge would become quite suspicious of someone when they say they did due diligence but then they don't you they don't see the reports when they say they don't remember something but they do have notes but they purposely don't provide the notes okay well that segues into my second point Mr. Taylor said that all he looked at with the underlying customer files he looked at payment records job job at credit applications things like that that's what he took notes on he was very clear about that he was very clear that he didn't look at the transaction files between galaxy and mountain bank which is where the U.C.C. might have been so the district judge just ignored all that but your argument would be better if he didn't have the burden of proof stating those points but if you have the burden of proof then I think then what your you know counsel on the other side would argue is you know if you had the burden of proof then you know put it all out there you said you knew what you had an actual knowledge at some point but you never you never proved that well we proved that we didn't have it during the due diligence by virtue of what Mr. Taylor and Tyler said they said what they looked at and what they looked at and all that by the way all the customer loan files were put in evidence at trial and none of them contained the U.C.C.'s so it's absolutely clear that what the due diligence file the due diligence file he left the company he evidently had some notes and he has no idea what happened to him I don't think they were ever specifically you never to get back to what you started with you never asked the judge given the remand from the from the Ninth Circuit you never asked to put in any more evidence no both parties stipulated it would go on the same record and did you ask the judge to make a specific finding of fact as to whether or not he believed or disbelieved your witnesses the judge did not make a finding of fact the judge made a conclusion of law that we could meet our burden of proof only if Mr. Taylor had said I looked in those files and didn't see any U.C.C.'s but three points one that theory had never been tendered to Mr. Taylor said I looked only in the loan files and what I saw in loan files and then he listed a bunch of things that didn't include the U.C.C.'s and then third the U.C.C.'s as a matter of law would not have imparted knowledge and that comes from the specific language of 9308 which talks about knowledge in specific chattel paper and all the commentaries that I discussed on my initial argument are based on the specific language and the specific policies of 9308 and I think where the trial judge went astray is he didn't really believe that 9308 operates contrary to the way the rest of the U.C.C. operates and that the party in P.B.C.'s position is disfavored because they didn't stamp or take possession well if he didn't believe that why did he go to the alternate theories why did he go to the alternate theories well yeah he went down to he had alternate theories of why you were going to lose alternate theories that are so far beyond the remand it's almost mind boggling I mean the purchase loan theory that he relied on was never even briefed on remand and it had been argued and lost before him in the original trial and argued and lost on appeal I mean frankly this is a judge who concluded for whatever reason that our party wore the black hat the other party wore the white hat and what we don't have rational fact finding here what we have is a judge appeal trying to appeal proof by going outside the remand with respect to duplicate contracts these were fraudulent contracts that my client had no knowledge of there's never been a history a case in the history of the U.C.C. that says to prove possession you have to prove that nobody created any fraudulent contracts this it would be a mockery of the U.C.C. mind boggling new rule that would really upend the entire secondary market in chattel paper can you just address real quickly her argument on new value a new value I think a new value the Blinwood case is dispositive as is the statutory language the statutory language says if you release a security interest that's new value and that's exactly what happened every time the substitute was returned a security interest was released and galaxy got the right to either try to collect the payments under that security interest or repossess so there was new value as a matter of law I mean there you're exchanging something that it seems in my eyes at least to be almost worthless it's a defaulted this is a false account yes or a performing loan that just doesn't seem like it's anywhere close to being an equivalent exchange it doesn't have to be an equivalent exchange all it has to be is an exchange I mean this goes back to first year contracts and the nature of consideration it doesn't have to be even if it's a sham exchange that's okay no this is not a sham exchange there was value there because they had the right to repossess the mobile homes that's not true that's not sham consideration but you're depleting the debtors estate I mean that to me the new value requirement seems like okay you're going to give up something but the debtor you know you're there's some at least rough equivalence right but in this situation you're just completely depleting the debtors estate well you're not completely it's not an equivalent transaction that's for sure but it is new value and it's new value under the definition of new value the release of a security interest the Linwood case is dispositive I think on the first appeal the first panel basically told the district judge that it thought the Linwood case demonstrated new value it was either a soft reversal or a strong hint and the district judge didn't take the hint but also the original purchase price constituted new value if for example you need to wrap up your can I make this one last point well you can make you up one minute you're already four minutes over if you were to buy a piece of stereo equipment and it didn't work and you took it back you wouldn't be thinking that you got and you got a replacement you wouldn't be thinking you got the second one for free what you'd be thinking is the original purchase price entitled you to a working stereo and so the original purchase price as a matter of law constituted new value and those there any further questions I thank the court for indulgence all right thank you both for your argument this is a difficult case and you both did a good job on argument we appreciate that this matter will stand submitted
judges: Korman, Callahan, Watford